**ALTON–ARLAN'S DEPT. STORE, INC.,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 15145.

United States Court of Appeals
Seventh Circuit.

Jan. 28, 1966.

David K. Page, Honigman, Miller, Schwartz & Cohn, Detroit, Mich. (Mark Shaevsky, Detroit, Mich., of counsel), for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., Atty., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Linda R. Sher, Atty., N. L. R. B., Washington, D. C., for respondent.

Before DUFFY, SCHNACKENBERG and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Alton-Arlan's Department Store, Inc. requests us to set aside an order of the National Labor Relations Board, in which it was held to have violated section 8(a) (3) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3), (1), by discharging four employees for engaging in protected activity. The Board's decision and order are reported at 150 N.L.R.B. No. 124.

Petitioner operates a nationwide chain of department stores, including one in East Alton, Illinois. Before the East Alton store began operations in August, 1963, the union [1] organized the newly hired employees and demanded recognition. Petitioner acceded to the demand, and a bargaining agreement was signed on November 12, 1963. The bargaining unit defined in the contract did not include custodial employees.

Petitioner hired four custodial employees who worked at night when the store was closed. The primary duties of these employees were janitorial; they were, however, required to report any unusual occurrence, such as a fire or break-in.

During the period from the opening of the store until December 1, 1963, Chris Gill, the store manager, reprimanded the custodial employees on a number of occasions for the unsatisfactory performance of their work. His dissatisfaction with these employees finally prompted Gill to discuss with his district supervisor the advisability of subcontracting the work. Thereafter, Gill solicited and received bids from independent cleaning services interested in performing the custodial work, including one operated by Donald Basden.

On December 1, Gill discovered three of the custodial employees sleeping on the job. He told them to punch out immediately and leave the store. The next day Gill called his district supervisor and related the incident. He was given approval to subcontract the custodial work.

Gill testified at the hearing before the trial examiner that on the same day, December 2, he contacted Basden and subcontracted the custodial work to Basden's organization. He testified that Basden said he could not start operations until December 4, and that in order to insure continuity of work until then, he, Gill, withheld notifying the employees of their discharge until the 4th.

In the meantime, unknown to Gill, a spokesman for the custodial employees contacted the union and objected to the fact that the custodial employees were not being paid according to the contract rate. The union business agent, Ray

1. Retail Clerks Local 149, Retail Clerks International Association, AFL-CIO.

Haggard, discussed the matter with him and later decided that the custodial employees were covered by the contract.

On December 3, in the presence of two of the custodial employees, Haggard called Gill. Haggard testified before the trial examiner that he informed Gill that the custodial employees were complaining because they were not receiving the union scale. He testified that Gill told him that he did not think these employees were covered by the contract, that the store could not afford to pay the union scale and would discharge them if forced to pay the scale. Haggard further testified that Gill said that an outside service would probably do the work at a cheaper rate.

Gill's testimony at the hearing about his conversation with Haggard on December 3 was different. According to Gill, the call was made in connection with the sleeping incident of December 1. He testified that in the course of the discussion Haggard raised the question of contract coverage, that he told him that the custodial employees were not covered by the contract and that in any event the store had made arrangements to subcontract the work. He also said that he gave Basden's name to Haggard and told him that Basden employed union help. Gill further testified that immediately after this telephone conversation he called petitioner's attorney and told him that he had subcontracted the work to Basden, and that he had just informed Haggard of this fact. The testimony of petitioner's attorney tended to corroborate Gill's testimony concerning this latter telephone conversation.

The four custodial employees were discharged on December 4, and replaced by Basden's employees.

In his decision, the trial examiner observed that the petitioner, having found three of the custodial employees sleeping on the job, would have been justified in discharging them, particularly in light of the fact that their prior work had

been unsatisfactory. The examiner concluded, however, that the employees' sleeping on the job was used as a pretext by the petitioner for discharging them so that it would not have to deal with the union on their behalf. He ruled that the custodial employees were discharged after engaging in protected activity in violation of section 8(a)(3) and (1) of the act. He also held that petitioner violated section 8(a)(5) by subcontracting the custodial work without first bargaining with the union.

The Board overruled the trial examiner's finding with respect to the section 8(a)(5) violation,[2] but adopted his finding of a violation of section 8(a)(3). The Board's order requires petitioner to offer reinstatement with back pay to the discharged custodial employees.

The question presented is whether there is substantial evidence in the record as a whole which supports the Board's finding that the custodial employees were discharged for seeking union aid and representation.

To prove that petitioner violated section 8(a)(3), the General Counsel was required to produce evidence of a substantial nature showing (1) that prior to the time the custodial work was subcontracted Gill knew that the custodial employees were engaging in union activities, and (2) that these employees were discharged for seeking union aid rather than because of their unsatisfactory work.

It is beyond dispute that the petitioner had no knowledge of any union activities by its custodial employees until December 3. The trial examiner so found. Accordingly, if the subcontracting occurred on December 2, that is, one day prior to such knowledge, the discharge of the employees could not have been improperly motivated. NLRB v. Ace Comb Co., 342 F.2d 841, 848 (8th Cir. 1965).

The testimony of Gill that he called Basden on December 2 and subcontracted

---

2. The Board found that since custodial employees were excluded from the bargaining unit, the petitioner had no duty to bargain with the union concerning their dismissal.

the custodial work was uncontradicted. Moreover, it was corroborated by petitioner's attorney. Yet the trial examiner refused to credit Gill's testimony in this regard. Instead, in our estimation, he engaged in circuitous reasoning based upon negative inferences in order to conclude that Basden's service was not employed until after Gill learned that the custodial employees had talked to the union about their wages.

In the first place, the examiner credited Haggard's version of the conversation on the 3rd rather than Gill's version. He reasoned that according to Gill's version of the conversation Haggard called him to see if the employees still had their jobs, yet there was no occasion for such an inquiry because Gill had not mentioned to the employees their impending discharge. Moreover, since the custodial employees admittedly went to the union about their wages and not because they feared losing their jobs, the examiner concluded that it would be natural for Haggard to call Gill regarding the wage rates. Then, having credited Haggard's testimony, the examiner drew from it the inference that the subcontracting had not occurred at the time of this conversation. He reasoned that when Haggard told Gill that the custodial employees thought they were entitled to the contract wage scale, Gill, instead of saying that the custodial work had been subcontracted, questioned whether the contract covered the custodial employees and said that he could probably get the work done cheaper by an outside service.

Secondly, the examiner stressed the fact that petitioner did not call Basden to testify as a corroborating witness. He held that this permitted the inference that if Basden had testified he would not have corroborated Gill's testimony.

 We do not think that the examiner's credibility resolution of the disputed conversation between Gill and Haggard permitted him to ignore the uncontradicted evidence in this manner. The burden of proof rested upon the General Counsel to prove the charge; there was no burden on the petitioner to disprove it. Yet, by implying that Basden, if called as a witness, would have contradicted Gill, the examiner, in effect, shifted the burden of proof from the General Counsel to the petitioner. Under the circumstances we think the examiner was required to find that the work was subcontracted on December 2.

Moreover, the record is devoid of evidence that petitioner was motivated by antiunion hostility in subcontracting the custodial work. Rather, the record shows that the custodial employees had proved unsatisfactory, that the petitioner had considered subcontracting the work long before December 2, and that the subtractor who was engaged employed union labor.

In summary, the evidence is insufficient when the record is considered in its entirety for the Board to hold that a motivating reason for discharging the four custodial employees and subcontracting the work was to avoid dealing with the union about their wages.

The Board's order is set aside.