**J. C. PENNEY COMPANY, Inc.,**
**Petitioner,**

v.

**NATIONAL LABOR RELATIONS**
**BOARD, Respondent.**

No. 17081.

United States Court of Appeals
Seventh Circuit.

Aug. 25, 1969.

Theophil C. Kammholz, Richard H. Schnadig, Chicago, Ill., for petitioner,

---

Vedder, Price, Kaufman & Kammholz, Chicago, Ill., of counsel.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Herbert Fishgold, Atty., NLRB, Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Allison W. Brown, Jr., Ronald R. Helveston, Attys., NLRB, for respondent.

Before CASTLE and KILEY, Circuit Judges, and WISE, District Judge.

KILEY, Circuit Judge.

This petition to review and set aside presents the question whether substantial evidence on the record as a whole supports respondent Board's decision that petitioner J. C. Penney Co., Inc. (Penney) discharged its employee Kate Owens for union activity in violation of 8(a) (1) and (3).[1] We deny the petition and enforce the order.

Penney is a national merchandiser with Store No. 1814 in Indianapolis where Kate Owens was employed. She had begun to work there in 1962. On July 17, 1967, she went on sick leave. When she returned for work on Monday, September 11, she was informed that she was discharged. The unfair labor practice charge, complaint and proceeding followed.

The complaint and Penney's answer before the board set the discharge "on or about September 11, 1967." The trial examiner rejected Penney's asserted good cause reasons for the discharge and concluded that the discharge violated Sec. 8(a) (3) and (1) of the Act. The Board's Decision and Order adopted the recommended order to reinstate Kate Owens with full back pay, to cease and desist from discriminating against any employee to discourage him from union membership, and to post a compliance notice.

The General Counsel had the burden to develop substantial evidence that when Kate Owens was discharged Penney, knew of her union activity. Alton-Arlan's Dept. Store, Inc. v. NLRB, 355 F.2d 513 (7th Cir.1966). This is the decisive point in the case. If she was discharged before Penney had knowledge of her union activity, her discharge could not be discriminatory. Penney argues that the Board's order is not supported by the record because there is no evidence to show that on September 7, when the *decision was made* to discharge Kate Owens, it had knowledge of her union activity, and therefore no evidence that it was motivated by union animus.[2]

The findings of the examiner are, in substance: Kate Owens "went on sick leave" July 17, 1967. During her leave, store manager White and her stock room supervisor Wolfe talked with her about changing her position from a stock room clerk to a "chase machine"[3] operator. She originally rejected the change but after being told by Wolfe that that was "all he had for her" she accepted. She called White September 7 saying she was free to resume work. He told her

---

1. Section 8(a) (1) and (3) of the Act provide, in pertinent part as follows:

   (a) It shall be an unfair labor practice for an employer—(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 * * *

   * * * * *

   (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *.

   29 U.S.C. § 158.

2. In this connection Penney states, without authority, that the Board's conclusion of discriminatory discharge "rests on inference," not proof, and accordingly does not meet the substantial evidence test. We reject this notion if it means that the Board may not rest its conclusion on inferences drawn from substantial evidence. Also we reject the notion that "direct evidence" to contradict Penney officials' testimony was necessary to the General Counsel's case.

3. A machine used to "prepare tickets for application and checking of merchandise."

to report Monday, September 11. When she reported he discharged her and gave her a pay check already made out.

On September 4, during the leave, Kate Owens and her daughter—also a Penney employee—signed union authorization cards. On Thursday, September 7, outside the store, she gave a card to an employee Andrews, asking her to sign. Later that day she talked to two other employees about the union. On the evening of Friday, September 8, Wolfe told Malson, head of the shoe department, that Kate Owens was trying to organize the store. On Saturday, September 9, Malson passed this on to Metcalf, the men's department manager. Metcalf tried unsuccessfully to reach store manager White, who was out of town on the 9th. Wolfe had not, on September 8, told White what he had told Malson, but did tell Smalley, the assistant manager. Smalley asked White on Sunday, the 10th, if he knew that Kate Owens was trying to organize the store. When Smalley asked White what he planned to do, White answered, "I'll consider it."

These findings are based on uncontroverted evidence. That does not mean, however, that they compel acceptance by the factfinder at face value. A trier of fact may find that though uncontroverted, testimony may bear inconsistencies when viewed in the light of the record as a whole, common experience, and credibility determinations.

Penney's theory at the hearing and in this court is that Kate Owens was discharged by White on September 7 for good cause and not for union activity. The Examiner considered this theory and the testimony of Penney officials in view of further testimony: Kate Owens had been a satisfactory employee for more than five years, had received regular pay raises, and had served as interim supervisor from July to October, 1966. She had been commended during 1967 by Wolfe and White. As late as

May, 1967, White told her, "We'd hate to lose you, you're a good worker and you get along with everybody."

The examiner thought Wolfe a "hesitant and evasive witness" and took Kate Owens' version where it conflicted with Wolfe's. He declined to accept White's testimony as to his ignorance of Kate Owens' union activity until Sunday, September 10, 1967. The examiner found the record as a whole did not support Wolfe's reasons for his "decision" to discharge her on Thursday, September 7. These credibility determinations were well within his discretion.

We find substantial support on the whole record for his rejection of White's asserted valid reasons for discharging Kate Owens: Penney's reliance on records showing production increases during and after her sick leave must be viewed against the testimony that Christmas was a busy season, and that over-all production increased from 1966. Her twice a week tardiness must be viewed with her uncontradicted testimony that she worked overtime at regular pay to make up. The examiner viewed her disagreements with fellow employees as nothing more than the trivial incidents which may arise where "women (or men) work together in reasonably close proximity."

Penney suggests that the discharge was at most "inconsiderate or unfair," but insists there is no "shred" of evidence on which to base an inference that it knew of her union activity at the time of discharge. It contends important evidence supporting its case was ignored. We see no merit in either the suggestion or the argument. That the evidence was not taken at face value does not mean that it was ignored. And we have found there was evidence from which the inference could be drawn that Penney knew of, and discharged Kate Owens because of, the union activity.

■ Certainly the examiner states objectively the testimony of Penney's of-

ficials as to what transpired on the crucial weekend of September 7–11. And as we noted above, the examiner was within his discretion in not crediting a "hesitant and evasive witness." The examiner admitted, as not controlling credibility however, a polygraph test of White favorable to Penney concerning White's knowledge of Kate Owens' union activity before Sunday, September 10. We cannot say the polygraph controlled, and the examiner did not accept White's testimony at the hearing. This credibility determination was well within his discretion.

Penney argues, on authority of Alton-Arlan's Dept. Store, Inc. v. NLRB, 355 F.2d 513 (7th Cir.1966), that the Board's Decision and Order was erroneous in favoring the general counsel's case by discrediting White's testimony for want of corroboration. But the examiner was not required by *Alton* to credit White's testimony at face value. The Board found significant the absence of testimony that Wolfe was informed of White's September 7 "decision" to fire Kate Owens. Wolfe was Kate Owens' supervisor and according to his testimony he had, while she was on sick leave, urged her discharge upon White who decided against dismissal then because of company policy of not dismissing while an employee was on sick leave.

Why would not Wolfe, who learned of the union activity at noon September 8, tell White then what he told Malson that night? Why would not White have told Wolfe of his December 7 "decision" to fire her, or direct Wolfe to execute the decision? The examiner and the Board could well have viewed with skepticism the Wolfe to Malson to Metcalf to Smalley to White series of talks about Kate Owens' union activity. He could have thought the news was important to the Penney management and unlikely that it was not given to White before Sunday.

We conclude that the Board's findings have substantial support on the record as a whole.

The Order will be enforced.